This suit is for divorce on the ground of desertion. The petitioner charges that as a result of the extreme cruelty of her husband she was compelled to leave him, and ever since and for more than two years thereafter he willfully and obstinately deserted her. The cruelty is alleged to have been habitual, and various acts are particularized. The defendant was served personally but failed to answer. The master, to whom the cause was referred, reported adversely, being of the opinion that the petitioner's testimony of cruelty was not adequately corroborated. The parties were married in February, 1918, and separated in June, 1921. No complaint is made of the husband's conduct prior to the birth of their child in January, 1920. From that time on it appears, from the testimony of the wife, that he choked and brutally beat her on many occasions, the last being the day she left their two-room apartment. A married sister of the defendant, who for six months lived in an apartment adjoining that of the couple, testified that very often she heard the petitioner screaming at night, and the defendant cursing, swearing and calling her vile names, and upon one occasion saw him choking his wife and knocking her head against the wall, and on another occasion, during a quarrel, which she overheard, the petitioner came running into her house with finger-prints on her arm, the defendant rushing after her and threatening "that he would break her damn neck." The sister further testified that the cursing and screaming were at all hours of the night and very often. Another witness testified that one night she heard the petitioner scream in distress and the next morning saw her with marks on her arm and face, and at another time, on a night when she and the petitioner had been to a dance and on returning home about twelve o'clock, she saw the defendant pull the petitioner in the door, pull off her hat and coat and throw her down a flight of stairs. The mother of the petitioner also gave testimony that she saw bruises on the petitioner's neck and arms, and that on speaking to the defendant about the assaults upon his wife he answered that she aggravated him *Page 57 
so that he could not help it. There was no corroboration of the last assault, the immediate cause of the petitioner's departure, which the master mentions, and, perhaps, mistakingly regarded as necessary to a compliance with the rule of corroboration. The rule is defined and applied in Lasker v. Lasker, 91 N.J. Eq. 352; Meek v. Meek, 92 N.J. Eq. 23; Orcutt v. Orcutt, 94 N.J. Eq. 303,
and Smith v. Smith, 96 N.J. Eq. 59; 2 N.J. Adv. R.1188. The testimony of the wife makes out, beyond question, a clear case of extreme cruelty. The rule of corroboration only requires that belief in its truthfulness must find support in the testimony of others, or of surrounding established circumstances. That I find in the testimony of the sister of the defendant, and the friend of the petitioner, as to specific instances of assaults by the defendant on his wife, and it is satisfying that she speaks the truth as to his violence on many other occasions when witnesses were not present. If he beat her once it is fair to assume, in the circumstances, that he did it again. If he beat her at the times as to which her testimony is corroborated, her story is acceptable as true that he assaulted her on the occasions as to which corroboration is lacking.
The petitioner is entitled to a divorce.